UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 08-372 (JNE/JSM) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| ROBERT ALLEN WOIDA, | |
| Defendant. | |

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon Defendant Robert Allen Woida's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 20] and Motion to Suppress Statements, Admissions, and Answers [Docket No. 21]. Richard Newberry, Assistant United States Attorney, appeared on behalf of the United States of America; Douglas Olson, Assistant Federal Public Defender, appeared on behalf of defendant Robert Allen Woida, who was personally present.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

Based upon the pleadings, the pre-hearing submissions, the post-hearing submissions and the testimony of Special Agent Janette May at the hearing on the present motions, it is recommended that:

1.	Defendant Robert Allen Woida's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 20] be **DENIED**; and

2.	Defendant Robert Allen Woida's Motion to Suppress Statements, Admissions, and Answers [Docket No. 21] be **DENIED**.

**I.	MOTION TO SUPRESS EVIDENCE**

Defendant Robert Allen Woida ("Woida"), who has been indicted for two counts of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2), has moved the Court to suppress the evidence obtained during the execution of the May 8, 2007 search warrant for a residence located in Richfield, Minnesota.  The search warrant at issue allowed law enforcement officers to search for: computer systems; media in whatever form; personal electronic devices; data contained on hard drives or other removable media, including deleted files, email files, and attachments that may show the possession and/or distribution of child pornography; papers and effects that tended to show the possession or distribution of child pornography; notes and documents that may reveal logins and or passwords; programs and manuals relating to operating systems or programs; proof of residency and documentation relating to the internet; any and all camera equipment, and videotapes that may be used for the possession, production and/or distribution of child pornography; and depictions of child pornography.  See Government Ex. 1.  Woida's counsel represented at the hearing that he did not have a legal basis to suppress the

evidence seized pursuant to the search warrant.[1]  Instead, defense counsel wanted "another set of eyes" to look at the face of the search warrant to determine if it was supported by sufficient probable cause.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. Illinois v. Gates, 462 U.S. 213, 236 (1983).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Gates, 462 U.S. at 238.  In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed.  Id. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge.").  As to what this Court should consider when reviewing a search warrant for probable cause,

---

[1] Defendant's motion to suppress evidence should be denied on this basis alone.

"[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citing United States v Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995)).

Here, the contents of the search warrant application and affidavit provided probable cause for the search of the Richfield residence. The following information was provided in the search warrant application's affidavit from Special Agent Janette May ("SA May") with the Minnesota Bureau of Criminal Apprehension:

- On April 26, 2007, SA May received information that Lieutenant Tony Jones with the Ashland County (Wisconsin) Police Department needed assistance with an undercover child pornography investigation. SA May received a report from Lieutenant Jones regarding his investigation and a webcam photograph of the suspect.

- SA May learned that on February 14, 2006, Lieutenant Jones created a Yahoo! account using the undercover persona of a fourteen-year-old female. Using this persona on February 20, 2006, Lieutenant Jones received an instant message from Yahoo! user "youngrobert2." Lieutenant Jones explained that during the chat they discussed the age of Lieutenant Jones's persona and had a conversation that was sexual in nature.

- Lieutenant Jones told SA May that since February 20, 2006, he had participated in 37 online conversations with "youngrobert2" and that all of the conversations involved sexual topics, ranging from masturbation to oral copulation. During a June 6, 2006 conversation, "youngrobert2" sent a webcam photograph of himself, which was that of a white adult male.

- On January 19, 2007, "youngrobert2" sent Lieutenant Jones's persona 16 images via Yahoo! Messenger. According to Lt. Jones, it appeared that ten of the images were photographs of child sexual abuse and six images appeared to be images of prepubescent children.

4

- On April 5, 2006, "youngrobert2" sent Lieutenant Jones's persona three more images via Yahoo! Messenger. According to Lieutenant Jones, one of the images appeared to be of a prepubescent child and a young teenager.

- On April 6, 2007, Lieutenant Jones sent 16 of the images sent to him by "youngrobert2" to the National Center for Missing and Exploited Children ("NCMEC"). The NCMEC reported that four of the images were of known child victims. Once of the images was positively identified as "a20fre2," which was of a young prepubescent female engaged in oral copulation with a male subject.

- With the assistance of Yahoo! Inc. and Qwest Communications, Lieutenant Jones learned that the Internet Provider ("IP") addresses that "youngrobert2" used in the course his conversations with Lieutenant Jones's persona came back to Robert and Mary Woida, at the Richfield residence.

- SA May entered the name of Robert Woida into the Minnesota Driver and Vehicle Service database and learned his full name, date of birth, driver's license number and address information, which listed the Richfield residence as Woida's address. SA May also obtained Robert Woida's driver's license photograph from the database, which was a match to the webcam photograph given to Lieutenant Jones's persona by "youngrobert2".

- Additional address verification checks were conducted, including an Accurint check, Hennepin County Property Inventory Search, an employer search and a Richfield Police Department check. All of searches confirmed that Robert Woida lived at the Richfield residence.

- SA May stated that she was aware that with today's technology, computer users utilize other internet capable devices to download, distribute, view, reproduce and store media including: MP3 players, video game counsels, personal data assistants, digital video recorders, cells phones, flash drives, digital cameras, digital camcorders, CDs and or/DVDs. Because of this, SA May requested permission to search the Richfield residence and Woida's person.

See Government Ex. 1.

Given this information, a reasonable person could conclude that contraband or evidence of a crime might be found in the electronic media at the Richfield residence,

5

including the items sought to be seized by the warrant. SA May established a sufficient nexus between the internet moniker, under which a suspect, "youngrobert2", had emailed an image of a pre-pubescent girl engaged in a sexual act, and the Richfield residence. Specifically, the IP addresses that "youngrobert2" used in the course his conversations with Lieutenant Jones's persona came back to Robert and Mary Woida, at the Richfield residence. Further, the webcam photograph sent by "youngrobert2" matched the photograph found on Robert Woida's driver's license. Finally, SA May conducted multiple address checks for Woida, all of which provided that he resided at the Richfield residence. This information, coupled with SA May's statements, that internet capable devices can be used to download, distribute, view, reproduce and store media provides a fair probability that child pornography could be found on electronic media at the Richfield residence.

Accordingly, for all of the reasons stated above, defendant's motion to suppress evidence should be denied.

## II.     MOTION TO SUPRESS STATEMENTS

### A.     Factual Background

SA May testified at the hearing that on May 8, 2007, she executed the search warrant for the Richfield residence with five other law enforcement officers. As she approached the residence, she observed Woida come to the front door with his wife and children. SA May testified that no weapons were displayed during the initial contact with Woida. SA May identified herself and explained that she had a search

warrant for the residence. Woida came outside to talk to agents, at which time he was told that he was not under arrest and that he could leave if he wanted during the execution of the search warrant. Agents told Woida that if he wanted to stay during the execution of the warrant, he would have to stay in a designated area.

SA May talked to Woida outside of the house and asked to interview him in a quiet place so no one else could hear. Woida agreed to talk with her in one of his children's rooms. According to SA May, she and Woida went into the room to talk to get away from the children. SA May talked to Woida by herself for approximately one hour before she turned on the tape recorder to take his statement. SA May stated that Woida was never given his Miranda rights because he was not in custody.

SA May told Woida multiple times that he was not under arrest and that he could leave upon his request. See also Government Ex. 2 (Recorded Statement of Woida). Woida never asked to leave, was never placed in any restraint or handcuffs, was never threatened, never asked for an attorney, never stated that he wanted to stop talking, and was not denied any physical needs. Woida's wife knocked at the door of the room several times during the interview. SA May characterized the atmosphere as quiet and stated Woida was polite and cognizant of what was going on. The interview was conversational and not adversarial.

After Woida's recorded statement, SA May asked Woida if there was anything further he wanted to say, to which he replied "no". Woida agreed to leave the house and was not placed under arrest after the interview.

**B.     Analysis**

Woida seeks to suppress the May 8, 2007 statement on the basis that at the time he gave his statement, his freedom of movement was restricted to a degree associated with a formal arrest, yet he was not provided with any Miranda warnings. See Defendant's Memorandum in Support of Motion to Suppress Statements at pp. 1-2. In support of this argument, Woida asserted that he was interviewed in a closed room while four other officers were conducting a search of his residence and as such, his freedom was restrained and he was clearly not free to leave the bedroom. Id. at p. 2. In response, the Government argued that Woida was not in custody and not under arrest during the questioning, and therefore was not entitled to Miranda warnings. See Gov't Response to Defendant's Motion to Suppress Statements at p. 1. In support of its position, the Government emphasized that Woida was repeatedly told that he was free to leave at any time. Id. at pp. 1-2.

Miranda v. Arizona requires that an individual be advised of her right to be free from compulsory self-incrimination and the right to the assistance of an attorney anytime the individual is taken into custody for questioning. Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). Therefore, the protections afforded by Miranda are triggered when an individual "is both in custody and being interrogated." United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (citing United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir.), cert. denied, 503 U.S. 1011 (1992)). "Custody occurs either upon formal arrest

or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444; see also United States v. Cartier, 543 F.3d 442, 448 (8th Cir. 2008) ("In assessing whether Cartier was "in custody" for Miranda purposes, we make a two-part inquiry: (1) was he formally placed under arrest or (2) was his freedom of movement restrained to the degree associated with a formal arrest.") (citation omitted).

When determining whether a suspect is in custody, courts may consider the following non-exhaustive list of "indicia of custody":

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;
>
> (2) whether the suspect possessed unrestrained freedom of movement during the questioning;
>
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;
>
> (4) whether strong arm tactics or deceptive stratagems were employed during questioning;
>
> (5) whether the atmosphere of the questioning was police dominated; and
>
> (6) whether the suspect was placed under arrest at the termination of the questioning.

Griffin, 922 F.2d at 1349; see also, United States v. Axsom, 289 F.3d 496 (8th Cir. 2002). The first three factors are considered "mitigating factors" which, if found, tend to show that the suspect was not in custody. Griffin, 922 F.2d at 1349. The remaining

three factors are characterized as "coercive factors" which, if found, tend to show the existence of custody.  Id.  While each of Griffin factors may be relevant to a determination of custody, "[t]he ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest." United States v. Czichray, 378 F.3d 822, 828 (8th Cir. 2004).

The determination of whether an individual is in custody at a particular time depends on "the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody."  Griffin, 922 F.2d at 1347 (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)).  Moreover, the determination is based on the totality of the circumstances, with none of the factors being dispositive, and a particularly strong showing on one factor may compensate for a deficiency on another factor.  Griffin, 922 F.2d at 1347.  The ultimate inquiry is whether there was a formal arrest or restraint on defendant's movement of the degree associated with a formal arrest.  Stansbury v. California, 511 U.S. 318, 322 (1995). However, Miranda warnings are not required merely because law enforcement officers question an individual who they suspect committed a crime.  See United States v. Leese, 176 F.3d 740, 744 (3rd Cir. 1990) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).

Based on the totality of the circumstances, the Court finds that Woida was not in custody during the interview on May 8, 2007.  The first of the six indicia of custody is

whether the suspect was informed that questioning was voluntary and was told that he was not under arrest. This factor weighs against a finding of custody in this case. According to SA May, she asked if Woida was willing to be interviewed. He was also informed that he could leave at any time and that he was not going to be placed under arrest. This indicates that Woida was not in custody.

With respect to the second factor, Woida was not restrained in any manner during the interview. The interview took place in his child's room. While the door was closed, Woida chose the room so the children could not hear and there is no evidence that Woida was physically unable to leave. Furthermore, SA May testified that Woida led her into the room. The second factor therefore suggests that Woida was not in custody.

The third factor for consideration, whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions, also weighs against a finding of custody. Although Woida did not initiate the interview, he voluntarily answered the questions of the officers and permitted himself to be interviewed. He never refused to answer any questions. Therefore, the third factor weighs against a finding that Woida was in custody during the interview.

With respect to the fourth factor, there is no evidence or suggestion that strong-arm tactics or deception were employed by the officers who interviewed Woida. SA May introduced herself as a law enforcement agent and asked if she could speak with Woida. The tone of the interview was relaxed, cordial and casual. Because there is

no evidence that the interviewing officers employed any strong-arm tactics or deceptive strategies, the fourth factor suggests that Woida was not in custody.

Regarding the fifth factor, the atmosphere was not dominated by law enforcement.  The factors that must be analyzed in evaluating the factor of police domination include the place and length of the interrogation, whether the police controlled the interrogation site and dictated the course of conduct of the suspect and other individuals, and whether the suspect was removed "from the presence of family, friends, or colleagues who might lend moral support during the questioning."  Griffin, 922 F.2d at 1352.  Here, the interview primarily involved SA May and Woida.  Furthermore, the interview took place at Woida's own residence.  "When a person is questioned 'on his own turf,' we have observed repeatedly that the surroundings are 'not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation.'"  Czichray, 378 F.3d at 826 (quoting United States v. Rorex, 737 F.2d 753, 756 (8th Cir. 1984); United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985)); see also Axsom, 289 F.3d at 502 ("When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial.").  Woida's wife also came to check on him several times during the interview.  The atmosphere cannot be considered to be police-dominated so as to warrant a finding that Woida was in custody.  This factor consequently weighs against a finding of custody.

Finally, as to the sixth factor, Woida was not placed under arrest at the conclusion of the interview. This weighs against a finding of custody.

In light of the above facts and analysis, the Court finds that a reasonable person in Woida's position would not have believed that he was in custody. Therefore, the Court concludes that Woida was not in custody during the interview at his residence on May 8, 2007. As such, he was not entitled to <u>Miranda</u> warnings and his motion to suppress statements made during the May 8, 2007 interview should be denied.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein,

IT IS RECOMMENDED that:

1. Defendant Robert Allen Woida's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 20] be **DENIED**; and

2. Defendant Robert Allen Woida's Motion to Suppress Statements, Admissions, and Answers [Docket No. 21] be **DENIED**.

Dated:      February 9, 2009

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 26, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **February 26, 2009**.